NOT FOR PUBLICATION

                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY

JOSEPHINE MILLER,

          Plaintiff,                    CIVIL NO. 05-5641 (FLW)

    v.

P.G. LEWIS & ASSOC., et al.,

                                              MEMORANDUM OPINION FOR
          Defendants.          REMAND [Docket Entry # 49]

**BONGIOVANNI, Magistrate Judge**

      This matter comes before the Court upon remand by United States District Judge Freda L. Wolfson for further explanation of this Court's July 7, 2006 Order. The Court, having reviewed the underlying arguments previously provided by the parties, as well as the District Judge's September 22, 2006 Memorandum and Order for Remand, and having decided this matter without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons discussed below, will further clarify Its July 7, 2006 Order.

**I.**    **BACKGROUND**

      Plaintiff Josephine Miller (hereinafter "Plaintiff") brought this civil action against Defendant P.G. Lewis & Associates, LLC. and Robert Half International, Inc., the parent company of Protiviti, Inc. (the company that had acquired P.G. Lewis on March 2, 2006) (hereinafter "Defendants"). In her second amended Complaint, Plaintiff alleges that she had worked as an in-house attorney at Praxair, Inc. for 12 years, performing legal/managerial duties. (Compl., ¶ 12). Plaintiff instigated a legal action against Praxair, Inc. for alleged incidents of

employment discrimination and violations of the Federal False Claims Act, among other civil counts.  (*Id.* at ¶ 13).  Thereafter, in or about February, 2005, Plaintiff alleges that she was utilizing her personal computer.  At that time, Plaintiff alleges that the computer indicated that other individuals were "logged on" to her computer.  (*Id.* at ¶ 15).  Plaintiff maintains that the computer was a privately owned computer, and that access to the computer was limited to herself as she had not given any other person authorization or access codes to utilize said computer.  (*Id.* at ¶¶ 16, 17).

Plaintiff further alleges that in or about June, 2005, in an attempt to determine who was accessing her computer, she sent her computer to a computer specialist (proposed Defendant John McLeod), who ultimately concluded that Defendant P.G. Lewis & Associates had "hacked" into Plaintiff's computer to a level which permitted said Defendant to utilize Plaintiff's computer as if Plaintiff herself was "behind the keyboard."  (*Id.* at ¶¶ 21, 22).  The computer specialist allegedly further identified specific instances of "hacking" in June and July, 2005, and that the "hackers" utilized a website to mask Defendant P.G. Lewis & Associates involvement.  (*Id.* at ¶¶ 24, 25).

As a result of the intrusion upon Plaintiff's person computer, Plaintiff set forth in her second amended Complaint claims against Defendants (including John Does) alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count One); New Jersey RICO (civil) violations, N.J.S.A. 2C:41-1, et seq. (Count Two); intrusion upon seclusion (Count Three); publicity given to private life (Count Four); intentional infliction of emotional distress (Count Five); and violations of N.J.S.A. 2A:38A-3 (Count Six).

After Plaintiff had learned through McLeod that Defendant P.G. Lewis & Associates had allegedly "hacked" into Plaintiff's personal computer, Plaintiff alleges that she once again gave the computer to McLeod on or about October 4, 2005, for the purpose of further investigation to determine the origin of email addresses found within the computer that had not allegedly been created by Plaintiff.  (*Id.* at ¶ 32).  Plaintiff states that McLeod and MCFRA IT Services have been in possession of the computer since that time.  (*Id.* at ¶ 33).

Thereafter, on or about December 24, 2005, and February, 2006, McLeod reported to Plaintiff, through her counsel Charles Dawkins, that he was in the process of recovering the contents of the emails in question.  Plaintiff further alleges that from February, 2006, to the present, McLeod, MCFRA IT Services and Dawkins have refused to provide Plaintiff with the information recovered regarding the emails in question.  Further, in or about March, 2006, Dawkins allegedly informed Plaintiff that he intended to amend her Complaint to add a claim for defamation based upon information retrieved from the emails.  (*Id.* at ¶¶ 34, 35).  Dawkins thereafter failed and/or refused to amend the Complaint, Plaintiff now asserts.  (*Id.* at ¶ 36).

In or about January, 2006, and again on or about April 21, 2006, Plaintiff alleges that McLeod informed Plaintiff through Dawkins that he had incurred costs of $33,000 resulting from his investigative efforts regarding Plaintiff's personal computer, without providing a detailed billing for said costs.  (*Id.* at ¶ 38).  Plaintiff alleges that the results of McLeod, MCFRA and Dawkins' failure to provide the information retrieved from Plaintiff's personal computer caused Plaintiff to be unable to meet scheduling deadlines imposed by the court, and their actions therefore "aid and abet Defendants P.G. Lewis, Robert Half and John Does in their efforts to cover up their pattern of racketeering and corrupt practices."  (*Id.* at ¶ 46).

Thereafter, Plaintiff discharged Dawkins, and on June 16, 2006, Plaintiff *pro se* filed a motion to amend her Complaint. The amendment sought to add McLeod, MCFRA and Dawkins as defendants. Specifically, Plaintiff seeks to add these defendants to the New Jersey RICO cause of action, alleging that they aided and abetted the original defendants in said defendants efforts to cover up their RICO violations. Further, Plaintiff sought to add a claim of conversion of the computer against the proposed defendants.[1]

## II. PROCEDURAL HISTORY

Plaintiff filed the original complaint on November 30, 2005. (Docket Entry # 1). On January 10, 2006, Defendants filed a Motion to Dismiss, which was subsequently denied by the Honorable Stanley R. Chesler, United States District Judge on March 7, 2006. The District Court further granted Plaintiff leave to amend Count Two of her Complaint. (Docket Entry # 13). The Second Amended Complaint was filed on March 21, 2006. (Docket Entry # 15).

On May 23, 2006, a correspondence Plaintiff attempted to file with the court was rejected because Plaintiff was not counsel of record. Thereafter, on May 31, 2006, Plaintiff entered herself *pro se*, terminating Dawkins, the attorney of record. (Docket Entry ##'s 24, 25).

On May 31, 2006, Plaintiff filed a Motion seeking to file a Third Amended Complaint. (Docket Entry ##'s 27, 31). On July 7, 2006, this Court denied Plaintiff's Motion to Amend. (Docket Entry # 34). On July 18, 2006, Plaintiff appealed this Court's determination. (Docket

---

[1] In an additional motion to amend filed after the district court's remand, Plaintiff alleges causes of action against the proposed defendants for conspiracy as well as aiding and abetting. Although the proposed amended complaint filed with the first motion to amend contained a claim only for aiding and abetting, and although a corrected proposed complaint was not provided with the additional motion to amend filed after the district court's remand, to alleviate perhaps another motion by the Plaintiff, this Court will consider both the aiding and abetting claim and the conspiracy claim in the present opinion.

Entry # 37). On September 22, 2006, the Honorable Freda L. Wolfson, United States District Judge, remanded the issue to this Court for further explanation. (Docket Entry # 49). In the Opinion issued, the District Court held that this Court "did not adequately discuss the elements of the futility analysis and, specifically, whether it would be futile for Plaintiff to amend her Complaint regarding her claims pursuant to the New Jersey Civil RICO Act."

### III.   DISCUSSION

#### A.   New Jersey RICO (Civil)

Plaintiff proposes to add additional defendants to her civil New Jersey Racketeer Influenced Corrupt Organizations Act claim (hereinafter "RICO" or "state RICO statute) (*see* N.J.S.A. 2C:41-1). The state RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." N.J.S.A. 2C:41-2(c). Under 41-4(c) "any person damaged in his business or property by reason of a violation of N.J.S.A. 2C:41-2 may sue" the violating party.

The New Jersey statutes and case law provide further guidance with regard to certain terms as set forth above. Specifically, the New Jersey statutes defines an enterprise as "any individual, sole proprietorship, partnership, corporation, business or charitable trust, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental as well as other entities." N.J.S.A. 2C:41-1(c). To claim a "pattern of racketeering activity" properly, a plaintiff must allege that (1) the defendant engaged in "at least two incidents of racketeering conduct one

of which shall have occurred after the effective date of th[e] [A]ct and the last of which shall have occurred within 10 years. . . after a prior incident of racketeering activity"; and (2) "the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."  *See* N.J.S.A. 2C:41-1(d).  Further, "[t]he factor of 'continuity plus relationship' between the two acts 'combines to produce a pattern.'"  *Mayo v. Pollack*, 799 A.2d 12, 20 (N.J. App. Div. 2002) (citations omitted).  "Racketeering activity" has also been defined and includes, *inter alia*, "forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes[, and] fraud in the offering, sale or purchase of securities."  N.J.S.A. § 2C:41-1o, p.

Additionally, conspiracy, as it is contemplated under the New Jersey RICO statutes, is defined under N.J.S.A. 2C:41-2d.  Section d provides that it is "unlawful for any person to conspire as defined by N.J.S.A. 2C:5-2, to violate any of the provisions of this section."  A New Jersey RICO conspiracy has two elements:

> an agreement to violate RICO and the existence of an enterprise.  The agreement to violate RICO itself has two aspects.  One involves the agreement proper, that is, an agreement to conduct or participate in the conduct of the affairs of the enterprise.  The other involves an agreement to the commission of at least two predicate acts.  If either agreement is lacking, the defendant has not embraced the objective of the conspiracy — the substantive violation of the RICO Act — that is required for any conspiracy conviction under classic conspiracy law.

*State v. Ball*, 661 A.2d 251, 268 (N.J. 1995).

### B. Federal Rules of Civil Procedure 8 and 9(b)

To the extent Plaintiff's state RICO action against the proposed defendants is predicated on fraud or mistake, said claims in the Complaint must be pled with specificity and particularity.

*See Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004) ("[I]n order to satisfy Rule 9(b), Plaintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.' Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'")

However, to the extent that Plaintiff's state RICO action is predicated on claims not based upon fraud or mistake, their allegations need only satisfy F.R.Civ.P. 8's general notice-pleading standard. *See Rose v. Bartle*, 871 F.2d 331, 362 n. 53 (3d Cir. 1989) (Rule 9(b) inapplicable because plaintiffs' claims of bribery and extortion do not allege fraud on part of defendants); *see also Chiropractic Alliance of New Jersey v. Parisi*, 854 F.Supp. 299, 308 (D.N.J. 1994) ("the allegations of theft by extortion, for example, are properly governed by the more lenient pleading requirement of F.R.Civ.P. 8").

Here, the additional allegations of Plaintiff's Amended Complaint are for aiding and abetting and conspiracy in relation to New Jersey civil RICO violations allegedly conducted by the existing defendants. Claims of conspiracy and aiding and abetting in relation to a RICO violation are not subject to the more stringent Rule 9(b) requirements regarding pleadings, but rather, the general notice-pleading standard of Rule 8. *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (citing *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1313 (1987) ("[A]llegations of conspiracy are not measured under the . . . 9(b) standard, which requires greater particularity of allegation of fraud, but are measured under the more liberal . . . 8(a) pleading standard . . . [E]ven rule 8, however, requires more than a conclusory allegation based on the language of the

statute . . . 'a complaint should describe the general composition of the conspiracy, some or all of its broad objectives, and defendants' general role in that conspiracy.'")(additionally analyzing aiding and abetting under Rule 8(a) standard, but applying claims of wire and mail fraud to the heightened Rule 9(b) standard of review).

  **C.**  **Motion to Amend Standard of Review**

  Leave to amend the pleadings under F.R.Civ.P. 15(a)$^2$ is generally given freely. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may nevertheless deny a motion to amend for reasons such as dilatoriness, undue prejudice, undue delay, repeated failure to cure deficiencies by amendments previously allowed or futility. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

  The standard of review for futility requires the Court to consider whether the complaint, as amended, would survive a motion to dismiss for failure to state a claim upon which relief could be granted. *Id.* Thus, when determining whether an amendment would be futile, the court applies the same standard as would be applied to a F.R.Civ.P. 12(b)(6) motion. *See In re Burlington coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)(citing *Glasman v. Computervision Corp.*, 90 F.3d 617, 723 (1st Cir. 1996)). Consequently, the court takes all of the allegations as true and considers them in the light most favorable to the plaintiff. *See Brown v. Phillip Morris Inc.*, 250 F.3d 789, 795 (3d Cir. 2001) (discussing standard to be applied when considering motion to dismiss pursuant to F.R.Civ.P. 12(b)(6)). Additionally, the court looks only at the pleadings. *Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau, Co., Inc.*,

---

$^2$ As Plaintiff filed her original motion to amend prior to the expiration of the July 14, 2006, deadline to amend pleadings as set forth in this Court's Scheduling Order, F.R.Civ.P. 16(b) and its standard of "good cause" is inapplicable to the issue at bar.

106 F. Supp. 2d 761, 765 (D.N.J. 2000).  However, legal conclusions made in the guise of factual allegations are given no presumption of truthfulness.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ( "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

    **D.**  **This Court's Denial of Plaintiff's Motion to Amend Based Upon Futility**

  In the Order dated July 7, 2006, this Court (within the confines of adding the proposed defendants under an aiding and abetting theory of New Jersey RICO liability) held that while proposed amendments are generally freely given, Plaintiff's proposed amendments would amount to "nothing more than a fee dispute with [Plaintiff's] potential expert and her former attorney disguised as a RICO claim . . ."  This Court further found that "Plaintiff has failed to allege any facts beyond mere speculation and conjecture to satisfy the necessary elements of a RICO cause of action . . . [and has] failed to sufficiently demonstrate and plead the elements of a RICO 'enterprise' or 'racketeering activity' involving [the proposed] Defendants."  This Court went on to make the same finding regarding Plaintiff's proposed amendments for conversion.

  Plaintiff, in her appeal and second attempt to file a Third Amended Complaint, asserts that this Court erred in its denial of her motion to amend because this Court failed to draw all "reasonable inferences" in favor of Plaintiff.  Further, Plaintiff alleges that additional evidence in support of adding the proposed defendants was set forth in a draft Amended Complaint that was filed with the clerk of the court, but for some reason not docketed.  Plaintiff asserts that proposed Amended Complaint contains evidence to show that the suggested fee dispute is actually a rouse set forth by the proposed defendants to cover their participation as conspirators and aider and

abettors for the existing RICO defendants.

Specifically, Plaintiff argues that McLeod's failure to produce the results of his findings is not the result of a fee dispute, but rather, an attempt by McLeod to assist the existing RICO defendants. In support of this assertion, Plaintiff alleges that the initial invoice from McLeod was an attempt to "scare" her into ending her suit against the existing defendants by charging high costs for McLeod's services. (Docket # 51, Brief in Support of Amended Motion, p. 7). This is evidenced, Plaintiff states, by the statement on February 6, 2006, made by McLeod to Dawkins that he "did not want the hours I am burning to scare you. We can work something out." (*Id.*). Plaintiff asserts that she had, in fact, offered to pay McLeod's invoice, but did not receive a response from McLeod to accept payment. (*Id.* at p. 8). Plaintiff further asserts that McLeod's business, to the benefit of McLeod and MCFRA IT Services, has tripled since the institution of the lawsuit. (*Id.* at p. 14). Plaintiff also argues that additional evidence supporting a RICO claim against the proposed defendants includes: Dawkins not allowing Plaintiff and McLeod to speak; Dawkins misrepresenting court deadlines to Plaintiff; Dawkins misrepresenting conversations between himself and McLeod regarding what had been recovered from Plaintiff's personal computer; Dawkins' failure to promptly withdraw as Plaintiff's counsel when so instructed by Plaintiff; McLeod's failure to timely provide discovery to existing defendants; and Dawkins and McLeod's decision to "do nothing" regarding the case when Plaintiff refused to pay McLeod's invoice. (*Id.* at pp. 12-13).

      i.    <u>aiding and abetting</u>

The Third Circuit has barred aiding and abetting as a viable claim under a federal civil RICO violation. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 657 (3d Cir.

1998). However, in New Jersey, aiding and abetting is an acceptable claim for New Jersey civil RICO violations. *Bondi v. Citigroup, Inc.*, 2006 WL 975856 (N.J.Super.L. 2005) (noting the Third Circuit's finding in *Rolo*, but holding that "New Jersey's RICO jurisprudence permits a claim lodged under this theory because of this state's expansive adherence to aiding and abetting liability in other tort contexts and its liberal interpretation of the elements of the RICO") (citing *State v. Ball*, 268 N.J.Super. 72, 107 (App.Div. 1993).

New Jersey courts have recognized the Restatement of Torts as setting the standard for civil aiding and abetting liability. *See Judson v. Peoples Bank and Trust Co.*, 25 N.J. 17 (1957). The Restatement provides that a person is liable for harm resulting to a third person from the conduct of another when he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . ." Restatement (Second) of Torts § 876(b).

Here, Plaintiff's support for alleging that McLeod and Dawkins have been and/or continue to be aiding and abetting the existing defendants is predicated on a missed deadline by Dawkins, a bill for services by McLeod and a failure to provide the information requested by Plaintiff by McLeod. This simply is insufficient to support a claim of aiding and abetting against either proposed defendant. First, Plaintiff fails to show that Dawkins missed deadline and McLeod's failure to provide any information he may have retrieved from his review of Plaintiff's personal computer is a concerted effort by either to assist the existing defendants. The evidence Plaintiff provides supports, far more readily, that the alleged failures by McLeod are the result of Plaintiff's failure to timely pay the invoice set forth by McLeod, or that Dawkins missed deadline was simply that, a missed deadline. The proposed Amended Complaint is further devoid of any

evidence to show that "assistance or encouragement" was given by either McLeod or Dawkins to the existing defendants, let alone "substantial" assistance. While the evidence set forth by Plaintiff may provide a basis for a fee dispute, it does not support a claim for aiding and abetting under New Jersey RICO.

Even under the less-demanding requirements of Rule 8(a), and under the broader reaching scope of the New Jersey RICO statute, the Court still must reject Plaintiff's assertions of aiding and abetting. They are, for purposes of the Rule 12(b)(6) analysis this Court is required to follow, simply the "bald assertions" of a Plaintiff who is unhappy with the services McLeod and Dawkins have attempted to render. On the face of the Amended Complaint, and taken in a light most favorable to Plaintiff, the actions or inactions of McLeod and Dawkins amount to nothing more than the normal course of business that occurs between lawyers and clients or contractors and clients.

Because Plaintiff fails to demonstrate any elements of aiding and abetting, the proposed Amended Complaint with regards to aiding and abetting cannot survive the Rule 12(b)(6) standard and is futile.

      ii.    **conspiracy**

As previously stated, this Court shall assume that Plaintiff has properly plead a conspiracy cause of action against McLeod and Dawkins in her Amended Complaint. As previously discussed, the New Jersey RICO statute as defined in N.J.S.A. 2C:41-2d requires that McLeod and Dawkins first entered an agreement to conduct or participate in the conduct of the affairs of the enterprise and second, that the agreement result in the commission of at least two predicate acts. *See also* S*tate v. Ball*, 661 A.2d 251, 268 (N.J. 1995).

In consideration of Plaintiff's Amended Complaint, this Court finds that Plaintiff has failed to demonstrate either requirement. Specifically, Plaintiff provides absolutely no evidence to show that McLeod and/or Dawkins entered into any agreement with the existing defendants to assist them in their RICO violations, or that McLeod and/or Dawkins have ever communicated on any level with the existing defendants for any reason. To allow Plaintiff to set forth a conspiracy claim, the communication element of conspiracy would have to be totally assumed.

Further, Plaintiff additionally fails to provide any evidence that McLeod and/or Dawkins have agreed to the commission of two predicate acts. The predicate acts as applicable to McLeod and Dawkins would not include the predicate acts as allegedly committed by the existing defendants, but rather, the acts of McLeod's billing, Dawkins missed deadline and McLeod's failure to provide any information retrieved from Plaintiff's personal computer. As previously stated, the Amended Complaint is devoid of any evidence to support any deliberate actions by McLeod and/or Dawkins in an attempt to further the existing defendants alleged RICO activities. Further, Plaintiff fails to demonstrate that the actions, if indeed intentional, were the result of McLeod and/or Dawkins agreeing with each other or the existing defendants in furtherance of RICO activities. Additionally, assuming *arguendo* that McLeod and Dawkins purposely withheld information and missed deadlines to further the existing defendants conspiracy, the McLeod and/or Dawkins acts in question cannot be established as racketeering activity under RICO. *Mayo, Lynch & Associates, Inc. v. Pollack*, 351 N.J.Super. 486 (2002).

As such, Plaintiff again fails to demonstrate any elements of conspiracy, and the proposed Amended Complaint with regard to conspiracy cannot survive the Rule 12(b)(6) standard and is

therefore futile.

### IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion to Amend Complaint shall continue to be DENIED pending instruction from the District Court.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

Dated: January 29, 2007